IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| BARBARA TELISCHAK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:04-CV-0016 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
TO REVERSE THE DECISION OF THE COMMISSIONER**

Plaintiff BARBARA TELISCHAK brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant MICHAEL J. ASTRUE, Commissioner of Social Security (Commissioner), denying plaintiff's applications for disability benefits and supplemental security income benefits (SSI). For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be REVERSED and the case remanded to the Commissioner for further administrative proceedings as set forth herein.

I.
PROCEEDINGS

On August 27, 2001, plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income alleging she became unable to work because of a disabling condition on January 12, 2001. (Tr. 80-82; 352-55). As illnesses, injuries or conditions limiting her ability to work, plaintiff alleged "primary biliary cirrhosis, anemia, fibromyalgia, depression,

continuous pain [and] fatigue." (Tr. 91). Plaintiff explained her conditions limit her ability to work by stating, "problems sitting, hard to get up & down, in pain all the time, weakness, tired." Plaintiff averred her conditions first bothered her in January 1987, eventually rendering her unable to work on July 26, 2001. Plaintiff advised, however, that she actually stopped working on January 12, 2001 when she was laid off by her employer. (Tr. 91). Plaintiff noted she had completed two (2) years of college (Tr. 97), and identified her past work as an accounting clerk/public relations- human resources, bookkeeper/administrative assistant and bookkeeping service (owner). (Tr. 100). At the time she filed her applications, plaintiff was 54-years-old.

On February 15, 2002, the SSA, identifying plaintiff's primary diagnosis as "primary biliary cirrhosis" and secondary diagnosis as "major depressive disorder in partial remission," denied plaintiff benefits determining plaintiff's condition was not severe enough to keep her from working. (Tr. 54, 56-62). On April 22, 2002, plaintiff, represented by an attorney, requested the SSA reconsider its initial determination, explaining she did not agree with the determination because "I am 56 years of age with health problems which include: fibromyalgia, primary biliary cirrhosis, anemia and depression." (Tr. 63). On June 7, 2002, the SSA, identifying plaintiff's primary diagnosis as "primary biliary cirrhosis" and her secondary diagnosis as "affective/mood disorders," denied plaintiff benefits upon reconsideration. (Tr. 55, 65-68).

On August 2, 2002, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), explaining she disagreed with the determination on reconsideration because "I am 56 years of age and suffering from fibromyalgia and primary biliary cirrhosis. I have trouble walking, sitting, or standing for extended periods of time." (Tr. 69-70). Plaintiff averred her condition had worsened in that she had also developed a B12 deficiency. (Tr. 115).

On March 19, 2003, the ALJ conducted an administrative hearing in this case. (Tr. 28-53). On July 22, 2003, the ALJ rendered an unfavorable decision, finding plaintiff not disabled at any time through the date of the decision. (Tr. 10-21).

In his decision, the ALJ found plaintiff suffers from the impairments of (1) fibromyalgia, (2) primary biliary cirrhosis, (3) anemia, (4) diabetes, and (5) depression. (Tr. 20). The ALJ found plaintiff's impairments were severe, but that plaintiff had no impairment or combination of impairments of such severity as to medically meet or equal any condition described in Appendix 1, Subpart P, Regulations No. 4. (Tr. 17-18, 20). The ALJ also determined plaintiff's "allegations regarding her limitations are not well supported by the medical record as a whole and are not fully credible." The ALJ determined plaintiff retained the residual functional capacity (RFC) to perform "light work" with the additional restriction, to wit: "mildly limited stress tolerance." (Tr. 20). The ALJ determined plaintiff, with her RFC, was able to perform the requirements of her past relevant work as an accounting clerk. The ALJ thus concluded plaintiff was not disabled under the standards of the Social Security Act at any time through the date of his decision. (Tr. 21).

On September 22, 2003, plaintiff, represented by counsel, requested review of the ALJ's decision. (Tr. 8-9). Upon the Appeals Council's denial of plaintiff's request for review on November 21, 2003, the ALJ's determination that plaintiff was not under a disability became the final decision of the Commissioner. (Tr. 5-7). Plaintiff now seeks judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

## II.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this court's role is limited to

determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94(5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d at 164. Stated differently, the level of review is not *de novo*. The fact that the ALJ <u>could</u> have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ decision.

### III.
### ISSUES

Plaintiff's brief in support of her application presents the following issue for review:

The Commissioner erred in finding plaintiff can return to her past relevant work as an accounting clerk because:

a. The ALJ incorrectly recited the VE's testimony;

b. The ALJ did not specifically set forth her physical and mental limitations and determine how those limitations affect her RFC; and

c. The ALJ did not make adequate findings regarding the actual physical and mental demands of her past work.

## IV.
## MERITS

After review of the administrative record, the Court is of the opinion that plaintiff's third claim, *i.e.*, that the ALJ did not make adequate findings regarding plaintiff's past relevant work, constituted error requiring remand of this case.

## A.
### Vocational Expert Testimony

At the administrative hearing, the ALJ questioned the VE as follows:

Q   I want you to assume a hypothetical individual at light exertional work as defined by the administration, and also <u>*moderately* limited in her ability to tolerate stress in work related settings</u>.  By moderate I mean significant [INAUDIBLE] but not severe.  Could such an individual you feel perform the Claimant's past relevant work?

A   No.

Q   Any other jobs in the national economy that such a person could do if we also consider the Claimant's age, education and work experience in the past?

A   Anything from where she has transferable skills.  We're at least moderate stress level involved.  An example would be a bank teller which is a lower skill level, and she could handle it as far as her experience is concerned as well, but you're dealing with people and a lot of those people get excited and upset about [INAUDIBLE] you know, and so now that would be a serious stress inducers when you're dealing with the public one after another after another so anything for which she has transferable skills I

| | |
|---|---|
| | don't think would [INAUDIBLE]. |
| Q | Um-hum. |
| A | [INAUDIBLE] |
| Q | [INAUDIBLE] |
| A | Oh, yes, well I can give you a couple of jobs that would be very routine, very one, possibly two-step operations, okay?  We're looking at files where she's putting together [INAUDIBLE].  We're looking at sedentary, we're looking at unskilled number two.  I can give you a number of 36,000 national and 4,000 regional.  We're looking at founders semiconductor, founder, semiconductor.  We're looking at sedentary, unskilled, number two.  We're looking at 12,000 national, 2,000 regional. We're looking at sewing machine operator, sedentary, unskilled, two, [INAUDIBLE] national and 4,000 regional.  And we're looking at very – a number of jobs, we're looking at the most routine jobs.  We're looking at the few that have the operation.  We're looking at the most easily replaceable. |
| . . . | |
| Q | Now, I have a second and I ask same person had *some intolerance to stress*, that is referred [INAUDIBLE] not only they couldn't tolerate [INAUDIBLE], but they could tolerate some routine stresses, would that – would the main part of that be [INAUDIBLE]? |
| A | Now if we're just talking about the stress of everyday – people didn't have their [INAUDIBLE] no – yes, sure, that could be handled.  I'm talking about people coming here and than raising cane because they're – there's been some strong [INAUDIBLE], but also there's some which could happen to anybody at any time.  Do you want the numbers on them? |
| Q | Okay, sure. |
| A | The [INAUDIBLE] counter is light, semi-skill number three, half a million national, 32,000 regional. |
| Q | Am I correct in assuming that her past relevant work would still be out of the [INAUDIBLE]? |
| A | Yes, [INAUDIBLE].  I would kind of put [INAUDIBLE] – a bookkeeper I would kind of cut out because they're going to have more contacts, personal contact with the people in the company on a you know, through the accounts basically. |

> Q    Okay.
>
> A    I wouldn't go [INAUDIBLE] here, but I don't know – my feeling is an accountant clerk would have no personal contact. And I'm using personal contact in the sense that personal contact leads to general stress. There's not the only stress generally, you know, work generates stress and any type of – some different types of work, new work generates stress. We're getting into gray areas of [INAUDIBLE] stress to different people.
>
> Q    So the theory you're depending on trying to evaluate that an accounting clerk might still be in?
>
> A    Yes.
>
> Q    Bookkeeper is probably out?
>
> A    Probably out.
>
> Q    Okay. And the human resources?
>
> A    I'd put that out, personnel clerk –
>
> Q    So you feel there's no [INAUDIBLE]?
>
> A    Would be out because there would be so much contact with people.
>
> Q    I don't know about the [INAUDIBLE]. With all the other things that a personnel clerk does?
>
> A    Okay.

Relying on the testimony set out above, the ALJ, in his findings, noted the plaintiff had past relevant work as an "Accounting Clerk (Bookkeeper)" (Tr. 19) and summarized the testimony of the VE as follows:

> Mr. Greiner testified that the claimant can perform her past relevant work based on the residual functional capacity as determined by the [ALJ].
>
> Restrictions were posed to the vocational expert in the form of a hypothetical question based on the restrictions found in the evidence of this claim. The same educational and vocational background as the claimant was assumed. Restrictions were set forth for a hypothetical individual to include limitations on lifting to 20 pounds occasionally and 10 pounds frequently. Other restrictions were described consistent with light exertional level work and a *mild* restriction

> on the individual's ability to handle work-related stress.
>
> The vocational expert was then asked whether this hypothetical individual [could] perform the past relevant work of the claimant as an Accounting Clerk, as performed by the claimant. The vocational expert's response was that the hypothetical individual could perform the sedentary exertional level duties of Accounting Clerk as the claimant performed them.
>
> The Administrative Law Judge adopts the opinion of the impartial vocational expert as shown above.

The ALJ then concluded plaintiff could return to her past relevant work and, thus, was not disabled.

### B.
### Plaintiff's Contentions

Plaintiff first argues the ALJ's finding of non-disability at Step Four was in error because the ALJ incorrectly recited the testimony of the VE as support for his decision of non-disability. Specifically, plaintiff argues the "VE's testimony was adamant that [plaintiff] could not return to her PRW," and that the VE's testimony was contrary to the ALJ's finding that plaintiff can perform her PRW as an accounting clerk. Defendant counters plaintiff's assertion by arguing that the ALJ posed two (2) hypothetical questions and that it was the second hypothetical to which the VE responded that plaintiff could perform her PRW.

Defendant is correct in his assertion that two different hypothesis were posed. In the initial hypothetical question posed to the VE, the ALJ asked the VE to assume a person with the capacity for light work and who was "*moderately limited* in her ability to tolerate stress in work related settings. By moderate, I mean significant [inaudible] but not severe." (Tr. 49) (emphasis added). The VE replied that such a person could not perform <u>any</u> of plaintiff's past work. The ALJ then posed a second hypothetical and asked the VE to assume the same person with "*some intolerance to stress.*" (Tr. 50). In response to this hypothetical, the VE first testified, as

plaintiff argues, that plaintiff's past relevant work would be out. (Tr. 51). The VE also stated plaintiff's past work as a bookkeeper would be precluded due to her "personal contact with the people in the company." The VE then testified, however, that it was his feeling an accountant clerk "would have no personal contact," *i.e.*, contact which would lead to general stress. The ALJ then asked the VE the following: "so the theory you're depending on trying to evaluate that an accounting clerk might still be in?" The VE answered, "Yes."

The second hypothetical question to the VE assumed a person with a lesser degree of stress intolerance than the first hypothetical, and the second hypothetical was consistent with the RFC subsequently assessed by the ALJ, to wit: "mildly limited stress tolerance." Consequently, if the VE's testimony relating to the second hypothetical is accepted as substantial evidence the plaintiff can perform accounting clerk duties, then the second hypothetical, which incorporated plaintiff's limitations as recognized by the ALJ, will support the ALJ's determination of not disabled <u>only if there is a basis, *i.e.*, substantial evidence in the record showing that plaintiff performed past relevant work as an accounting clerk</u>.

Plaintiff, quoting *Ingram v. Chater*, 107 F.3d 598, 604 (8th Cir. 1997), argues that despite having a VE available to testify, the ALJ failed to elicit evidence or make "explicit findings" regarding the actual physical and mental demands of plaintiff's past work, and made no attempt to compare plaintiff's RFC with the actual demands of her PRW to determine whether she is capable of performing the tasks required of that job. Plaintiff argues the only discussion the ALJ gave of her PRW was his notation that she had done some work after her alleged onset date as a "part time bookkeeper" but that she left that job due to fatigue and stress and from missing a great deal of work. (Tr. 18).

At page 9 of her brief, plaintiff references Social Security Ruling 82-62. SSR 82-62

guides an ALJ in determining whether a claimant can perform his or her past relevant work. The ruling directs an ALJ to set forth a rationale, in his decision, regarding a claimant's ability to perform past relevant work which "show[s] clearly how specific evidence leads to a conclusion." When an ALJ determines a claimant can perform a past relevant job, the SSR directs that the decision must contain findings of fact: (1) as to the individual's RFC; (2) as to the physical and mental demands of the past job, and (3) that the individual's RFC would permit a return to his or her past job in question. The ALJ's decision in this case contained a finding as to plaintiff's RFC, to wit: the RFC for "light exertional level work with a mild limitation on stress tolerance," (Tr. 19-20), as well as a finding that plaintiff's RFC would not preclude the performance of her PRW as an accounting clerk. (Tr. 20, 112). The ALJ's decision does not, however, recite any additional findings as to the physical and mental demands of plaintiff's past job as an accounting clerk, and, more importantly, the administrative record does not reflect any development of the specific requirements of that job as plaintiff actually performed it, if, in fact, plaintiff performed it.

The failure of the ALJ to adhere to the requirements of SSR 82-62 or to otherwise develop the duties of plaintiff's past relevant work was error. Not all error, however, warrants reversal and/or remand. Consequently, when an error consists of disregard of a Ruling, remand is appropriate only when the aggrieved party demonstrates prejudice. *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981). A claimant establishes prejudice by showing that adherence to the Ruling might have led to a different decision. *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000). Similarly, error consisting of violation of a Regulation may be disregarded when a reviewing court concludes it is harmless. *See Oderbert v. Barnhart*, 413 F.Supp.2d 800, 805 (E.D. Tex. 2006). The error in this case was not harmless. First, even if the Court assumes plaintiff's past

relevant work included the job of accounting clerk, there is not substantial evidence establishing the specifics of the accounting clerk job and critically, whether it encompassed interaction with co-workers or others to the degree contemplated by the VE when the VE found plaintiff unable to do her PRW as a bookkeeper. Secondly, the record does not establish that plaintiff's past relevant work actually included the job of accounting clerk. The mere use of the term "accounting clerk," particularly when the term is coupled with other jobs, is not sufficient to establish the demands or existence of that job. In fact, the only evidence reflecting the plaintiff performed PRW as an "accounting clerk" is found in her work history report (Tr. 100). There, plaintiff listed Accounting Clerk/P/R-Human Resources at a car dealership as a job she held from January 1, 1994 to December 12, 2001. Plaintiff's description of her job duties, however, was "Payroll Human Resources, employee benefits, drug testing, background checks." From plaintiff's description of her job duties, this job involved interaction with other employees, a fact the VE found to be significant when he eliminated bookkeeper from the work plaintiff could perform. This issue could have been resolved at the administrative hearing if there had been development, as required by SSR 82-62, of the physical and mental demands of plaintiff's past work. With such development, the record would reflect whether plaintiff's "Accounting Clerk/P/R-Human Resources" title did, in fact, include true accounting job duties and if so, whether those job duties were what the VE considered to be personnel clerk duties or bookkeeping duties (which the VE found plaintiff could not perform) (Tr. 51),[1] or whether those duties were accounting clerk duties (which the VE stated plaintiff <u>might</u> be able to perform). To the extent it could be argued that the jobs of bookkeeper and accounting clerk are so similar as to

---

[1] Plaintiff also argues that, assuming the ALJ's finding that plaintiff can perform the exertional demands of "light" work, the Grid Rules require a finding of "disabled." The ALJ, however, found plaintiff was not disabled at Step Four of the sequential evaluation and, thus, did not proceed to Step Five where the Guidelines would have been applicable.

be interchangeable, such is not the situation in this case because the VE found plaintiff not able to return to PRW as a bookkeeper but able to do PRW as an accounting clerk.  Further, the ALJ, in making his findings, referenced plaintiff's PRW as accounting clerk (bookkeeper) (Tr. 19), but did not explain why such jobs were combined.

Remand of this case is necessary for further development of plaintiff's past relevant work and whether such PRW included the job of accounting clerk.  It is noted the VE also provided testimony regarding jobs other than plaintiff's PRW.  The Court cannot affirm this case on that basis since the ALJ made no alternative findings at Step 5, and because much of the VE's testimony in that regard was inaudible.  The Court has also considered plaintiff's contention that the ALJ's determination that plaintiff can perform the exertional demands of "light" work would result in a finding of disabled under the grid rules.  The Court cannot render and award benefits on that basis, however, because, even though not developed, plaintiff did list, as part of her PRW, the job of accounting clerk.[2]  Consequently, remand is necessary in order for it to be established whether plaintiff had PRW as an accounting clerk, and if so, what her job duties were.

V.
RECOMMENDATION

For the reasons set forth above, it is the RECOMMENDATION of the undersigned United States Magistrate Judge to the United States District Judge that the decision of the defendant Commissioner finding plaintiff BARBARA TELISCHAK not disabled and not entitled to a period of disability benefits be  REVERSED and the case remanded to the

---

[2] As set forth above, however, plaintiff listed that job in combination with other jobs.

Commissioner for further administrative proceedings as set forth herein.

## VI.
## INSTRUCTIONS FOR SERVICE

The District Clerk is directed to send a copy of this Report and Recommendation to plaintiff's attorney of record, and to the Assistant United States Attorney, by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 2nd day of March 2007.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D). When service is made by mail or electronic means, three (3) days are added after the prescribed period. Fed. R. Civ. P. 6(e). Therefore, any objections must be filed **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).